

**FILED**

**May 26, 2017**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 8:00 A.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Clarence Bass ) | Docket No. 2016-06-1038 |
| ) | |
| v. ) | State File No. 59924-2014 |
| ) | |
| The Home Depot U.S.A., Inc., et al. ) | |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims, ) | |
| Kenneth M. Switzer, Chief Judge ) | |

---

### Affirmed and Certified as Final - Filed May 26, 2017

---

The employee, a parking lot associate, injured his wrist collecting shopping carts in his employer's parking lot. An authorized treating physician opined that the employee needed surgery, but that the surgery was related to a pre-existing arthritic condition rather than the event at work. Following a trial, the trial court found the employee had presented insufficient proof to rebut the presumption of correctness afforded the authorized physician's opinion and denied the claim. The employee has appealed, challenging the trial court's finding that he failed to establish that his need for surgery and resulting disability were causally related to his work. We affirm the trial court's decision, dismiss the case, and certify the trial court's order as final.

Presiding Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board in which Judge David F. Hensley and Judge Timothy W. Conner joined.

Carolina V. Martin, Nashville, Tennessee, for the employee-appellant, Clarence Bass

Kenneth D. Veit, Nashville, Tennessee, for the employer-appellee, The Home Depot U.S.A., Inc.

### Factual and Procedural Background

Clarence Bass ("Employee") alleged suffering an injury to his right wrist on August 1, 2014, while employed by The Home Depot U.S.A., Inc. ("Employer"). He claimed that while working as a parking lot attendant responsible for loading items for

1

customers and collecting shopping carts, the metal portion of a cart designed to hold a child flipped up and struck the back of his wrist and hand. He experienced pain and swelling and reported the incident on the day it happened. The parties do not dispute that the incident occurred or that Employee had pre-existing arthritis in his wrist.

Although Employee initially declined medical care, he ultimately requested and received a panel of physicians from which he chose Dr. Philip Coogan, an orthopedic surgeon, to be his authorized treating physician. Dr. Coogan provided conservative treatment, including injections into Employee's wrist, before recommending surgery for carpal tunnel syndrome and a "proximal row carpectomy" which, as explained by Dr. Coogan, "means surgical removal of several small bones in the wrist that makes the wrist more stable and less painful." The treatment Employee received prior to the surgical recommendation was paid for by Employer.

Subsequently, in an April 9, 2015 office note containing the referral for surgery, Dr. Coogan stated that while Employee did need the surgery, the procedure should be performed "outside of the Workers' Compensation system." In response to this note, Employer sent correspondence to Dr. Coogan seeking his opinion regarding whether Employee's need for surgery was causally related to his employment. When asked, "[d]o you still believe that the need for the current request for surgery and ongoing care is not work related and should be pursued outside of [workers' compensation]," Dr. Coogan answered "yes." He also indicated that he believed Employee was at maximum medical improvement for his August 1, 2014 work injury. Thereafter, Employer denied the claim "based on the panel physician's opinion that further care is no longer related" to the incident at work.

Dr. Coogan performed the surgery on July 24, 2015 and provided follow-up care, ultimately releasing Employee to return to work without permanent restrictions and assigning an eight percent permanent anatomical impairment rating to the body as a whole. Approximately a year and a half after the injury and eight months after the surgery, Employee was examined by another orthopedic surgeon, Dr. Robert Landsberg, who assigned an eleven percent permanent anatomical impairment to the body as a whole and opined that the need for medical treatment was causally related to the work injury.[1]

Employee returned to work after his injury and continued to work at the same job until he had surgery, though he required help performing certain tasks. After a period of being off work while recovering from surgery, he returned to work for Employer and was initially assigned to the garden area but ultimately returned to his position as a lot associate. He was terminated by Employer after multiple disciplinary actions, including

---

[1] Although Dr. Landsberg assigned a thirteen percent permanent anatomical impairment to the body as a whole in his report, he acknowledged in his deposition that he had miscalculated the impairment and testified the correct rating was eleven percent.

2

violation of Employer's attendance policy, failure to appropriately attend to customers' needs, and theft of tomato plants. Regarding the theft, Employee testified a vendor in the garden department told him he could take the plants home. The store manager, Michael Brown, testified that he reviewed security footage of the area where the plants were taken and that he could not identify a person matching the description of the vendor offered by Employee. Mr. Brown testified that he asked other vendors and they denied giving anyone permission to take the plants without paying for them.[2]

At trial, Employee sought payment of medical expenses associated with the surgery and follow-up care performed by Dr. Coogan, temporary disability benefits, and permanent partial disability benefits. The trial court found Employee had not established by a preponderance of the evidence that his need for medical treatment arose primarily out of his employment and denied his request for benefits. The trial court made alternative findings in the event its determination regarding the compensability of the claim was reversed on appeal. Specifically, the trial court accepted Dr. Coogan's impairment rating and determined Employee had been terminated for cause. Employee has appealed.

### Standard of Review

The standard we apply in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2016). The trial court's decision may be reversed or modified if the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A)  Violate constitutional or statutory provisions;
(B)  Exceed the statutory authority of the workers' compensation judge;
(C)  Do not comply with lawful procedure;
(D)  Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E)  Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2016).

---

[2] The manager also testified that Employee was under investigation at the time of his termination for returning items to the store without a receipt. Employee testified he had purchased these items from a "guy on the street" who happened to come by his house with Employer's merchandise and that he returned the items to the store so he could make "a few dollars."

In addition, for injuries occurring on or after July 1, 2014, as in this case, courts may not apply a liberal or remedial interpretation of the workers' compensation statutes, but must apply the law "fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2016). Consistent with that mandate, the legislature has made clear that the workers' compensation statutes "shall not be construed in a manner favoring either the employee or the employer." *Id.*

**Analysis**

Employee argues that the trial court erred in accepting Dr. Coogan's causation and impairment opinions over those of Dr. Lansberg's. Employee contends that, while the work incident involving the shopping cart may not have caused his underlying arthritic condition, it did cause the condition to become symptomatic and resulted in the need for medical care. Employee further argues that Dr. Landsberg demonstrated a better understanding of his injuries and, therefore, his opinion should be given more weight. In addition, Employee asserts that the trial court erred in concluding he was terminated for cause and thus not entitled to additional benefits under Tennessee Code Annotated section 50-6-207(3)(D)(ii) (2016). Employer responds that the trial court did not err in accepting Dr. Coogan's causation opinion and, alternatively, did not err in accepting his impairment rating and concluding Employee was terminated for cause.

At a compensation hearing where the parties have arrived at a trial on the merits, the employee must establish by a preponderance of the evidence that he or she is entitled to the requested benefits. *See* Tenn. Code Ann. § 50-6-239(c)(6) ("[T]he employee shall bear the burden of proving each and every element of the claim by a preponderance of the evidence."). As a part of this burden of proof, the employee must establish that the injury for which benefits are sought is a compensable injury as contemplated by the statute. To be compensable, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2016). In order to establish that an injury arises out of the employment, the employee must show "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B). Further, "[a]n injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(14)(C). "'Shown to a reasonable degree of medical certainty' means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(14)(D).

Also, it is well-established that a "trial judge has the discretion to determine which testimony to accept when presented with conflicting expert opinions." *Payne v. UPS*, No. M2013-02363-SC-R3-WC, 2014 Tenn. LEXIS 1112, at *18 (Tenn. Workers' Comp.

4

Panel Dec. 30, 2014). Thus, when medical opinions conflict, as in this case, "the trial judge must obviously choose which view to believe. In doing so, [the trial judge] is allowed, among other things, to consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991). When one of those experts is an authorized treating physician, that expert's opinion is afforded a presumption of correctness on the issue of causation. Tenn. Code Ann. § 50-6-102(14)(E).

Here, the trial court considered the testimony of the authorized treating physician, Dr. Coogan, and Employee's own physician, Dr. Landsberg, and found Employee had presented insufficient medical proof to rebut the presumption of correctness afforded to the authorized physician's opinion with respect to causation. The trial court observed that Dr. Coogan "firmly stated he cannot conclude within a 'reasonable degree of medical certainty' that the work accident was the primary cause of the need for [Employee's surgery]."

Based upon our review of the record, we agree with the trial court that the evidence is insufficient to rebut the presumption of correctness afforded Dr. Coogan's causation opinion. Dr. Coogan testified he "thought that the injury and occupational activities probably did not constitute more than 50 percent of the cause of his carpal tunnel" and that the relationship between the incident at work and Employee's condition was "somewhere between unrelated and modest." In an affidavit, Dr. Coogan testified it was his "opinion within a reasonable degree of medical certainty that [Employee] did not sustain an injury by accident that necessitated the need for carpal tunnel surgery on the right upper extremity." He confirmed that opinion in his deposition, and he agreed that, "within a reasonable degree of medical certainty that an injury by accident resulting in the need for carpal tunnel surgery did not arise primarily out of, nor in the course and scope of [Employee's] employment with [Employer]." When asked whether the proximal row carpectomy was related to the incident at work, Dr. Coogan replied, "I can't state with a reasonable degree of medical certainty that it was." He reiterated his belief that "the need for the surgery and ongoing care is not related [to the work injury] and should be pursued outside of the Workers' Compensation system."

In addition, Dr. Coogan testified that Employee had "severe arthritis in the wrist" and that it was "completely clear that the abnormalities in his wrist could not possibly be accumulated [since the work injury]." He went on to state:

> So he – there's no doubt that he had a significantly abnormal wrist, you know, for years really, that the radiographic abnormalities in his wrist take years to develop. And they are a consequence of an initiating injury, you know, long ago, several years ago that is – that produces some ligamentous instability in the wrist. . . .

5

. . . So if I have an arthritic wrist and I get it whacked or banged and that's going to hurt a lot for longer than if I have a normal wrist, but it's not the cause of my problem.

By contrast, Dr. Landsberg testified that the incident at work aggravated Employee's pre-existing arthritis, stating that

by hitting on the wrist, if it were just a direct blow, it can cause swelling in the soft tissues all around, it can cause swelling into the carpal bones, it can cause inflammation into the arthritic area, it can cause inflammation and swelling into the carpal tunnel, causing pressure on the median nerve. So that can all happen just from a direct blow.

If the wrist moved suddenly one way or the other, that could cause increased movement between the already probably arthritic carpal bones, causing more possibility of increased instability in the wrist, more collapse, and more inflammation in the joints, just from the flare-up of the arthritis.

When asked whether Employee would have needed surgery had he not continued to experience pain, Dr. Landsberg testified that, absent pain, he would not have recommended surgical intervention. He testified further that the primary cause of Employee's surgery was "pain and swelling and stiffness . . . from the work injury." It was his opinion that "based on that history, with the symptoms starting right after the injury, with that swelling, that the carpal tunnel syndrome was secondary to the work injury and leading to the surgery." Despite expressing his view that the need for surgery arose from the work accident, Dr. Landsberg did not question Dr. Coogan's methodology or otherwise explain how his opinion was flawed.

Employee acknowledges that he had an underlying arthritic condition unrelated to his work, but argues that he is not seeking benefits related to that condition. Rather, he asserts that he suffered a compensable aggravation of that condition arising primarily out of his employment that resulted in the need for surgery.[3] However, Dr. Coogan specifically addressed whether the need for medical treatment arose out of the work accident:

Q: In your medical opinion, was the need for surgery primarily caused by or related to the August 1, 2014, work accident?

_____

[3] Employee cites *Trosper v. Armstrong Wood Products, Inc.*, 273 S.W.3d 598 (Tenn. 2008), as providing a framework for analyzing the aggravation of a pre-existing condition. However, in light of significant changes to the law since *Trosper* was decided, reliance on that case is misplaced. *See Arriaga v. Amazon.com, Inc.*, No. 2014-01-0012, 2016 TN Wrk. Comp. App. Bd. LEXIS 12 (Tenn. Workers' Comp. App. Bd. Mar. 9, 2016); *Miller v. Lowe's Home Centers, Inc.*, No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015).

A: I think probably not.

He reiterated that "the need for the surgery and ongoing care is not related [to the work incident] and should be pursued outside of the Workers' Compensation system."

Not only did Dr. Coogan believe the need for surgery was not primarily caused by the incident at work and that it was "completely clear that the abnormalities in his wrist could not possibly be accumulated" since the event at work, he also made clear that Employee "had the same diagnosis before the injury as he had after the injury." And, while Employee argues that Dr. Coogan's opinion should be discounted because he thought Employee was struck by the plastic flap covering the cart's seat rather than the metal backing of the seat, Dr. Coogan testified that even if the metal part of the seat struck Employee, it would not significantly alter his opinion.

Finally, we note that Dr. Coogan treated Employee multiple times over several months, while Dr. Landsberg saw him only once in anticipation of litigation. "It seems reasonable that the physicians having greater contact with the Plaintiff would have the advantage and opportunity to provide a more in-depth opinion, if not a more accurate one." *Orman*, 803 S.W.2d at 677.

In short, Dr. Coogan's causation opinion is entitled to a presumption of correctness that has not been overcome. The trial court thoroughly discussed the evidence, correctly applied the controlling legal principles, and reached a result supported by the record. Applying the law "fairly, impartially, and in accordance with basic principles of statutory construction" and avoiding a liberal or remedial interpretation, as we must under section 50-6-116, we affirm the trial court's decision and dismiss the case.

## Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision or violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed, the case is dismissed, and the trial court's order is certified as final.

7

**FILED**

**May 26, 2017**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 8:00 A.M.**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Clarence Bass | ) | Docket No. 2016-06-1038 |
| | ) | |
| v. | ) | State File No. 59924-2014 |
| | ) | |
| The Home Depot U.S.A., Inc., et al. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 26th day of May, 2017.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| Carolina V. Martin | | | | | X | cvmartin@hughesandcoleman.com |
| Thomas R. Lewis | | | | | X | tlewis@hughesandcoleman.com |
| Kenneth D. Veit | | | | | X | kenny.veit@leitnerfirm.com |
| Kenneth M. Switzer, Chief Judge | | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov